Mr. Cardall, when you are ready, you may proceed. May it please the court, my name is Eric Cardall, and I represent the appellants in the case. We seek reversal of the Rule 12 decision below. The standard of review is de novo, and as the court knows, the factual allegations of the complaint need to be taken as true. We have two big issues with the district court opinion. We can start with page 18, where there's the discussion of our claim for declaratory judgment, that's perspective relief. There it says there's remedy, it's a case where there's remedy in search of a right that doesn't exist. But our view is under Morales and Papachristou, the Nygards have a right to be free of fear of criminal prosecution and jail under an unconstitutionally vague ordinance. So that's the due process clause. Now remember, when the remedy is sought is a declaratory judgment act, and the court knows this, that the requirements are substantial controversy, parties with adverse interests, but most importantly here, immediacy and existence of a controversy to warrant declaratory judgment. Secondly, the alleged facts that support the claims weren't properly understood by the district court of the opinion. Critically, at page four, the court said the city did not approve the permit. Well, that suggests that there was a decision made, but in the complaint allegations 80 through 88, the paragraphs, if a decision had been made, then there would have been a civil appeal process, and this would have been resolved civilly. Instead, there was a builder acknowledgement form put out by director of development, Jeremy Barnhart, and that had inapplicable conditions, which essentially denied my client a proper application process. Now, when you think about it, after the criminal trial, the city didn't require a permit. So let's think about that. So the judge wrote the city did not approve the permit after the criminal trial, the city didn't require the permit. So I think we should just stick with taking the allegations the complaint is true. If that were true, if that's the case, then then the rule 12 requirements for the complaint have been met. So let's go through a little bit of the history. And so Mr. Nygaard read the ordinance 86-66 not to require a permit. City Inspector Pizzo came out, did not stop the Nygaards with a stop work order, but instead asked them to apply for an after the fact permit under 86-36. Mr. Nygaard, in abundance of caution, followed the advice, applied for the permit. Then director of development, Jeremy Barnhart, who knew the law, put inapplicable conditions in a builder acknowledgement form. Our client objected to that. He tried to get them to agree. Then after six weeks of disagreement, he wrote email to the prosecutor, please file a citation that would be against the Nygaards. Nygaard spent the last six weeks arguing with me. That's appendix 75. So, you know, it's sort of like you put an inapplicable condition in and then you tell the prosecutor to prosecute. That's the type of coercion. The police officer relied on the Barnhart's report, didn't do a separate investigation. There's no evidence of him reading the ordinance, no inspection of the property. The prosecutor, the same. So it was this little cycle of coercion for Nygaards to comply with the inapplicable condition. And they didn't. They went to trial and they prevailed. And so the problem here is, first, that this is a prosecution without probable cause, which supports the First Amendment retaliation claim. It's a malicious prosecution. It's an abusive process. But also, it supports the vagueness claim, you see. That's really important. So remember declaratory judgment. It has to be imminent and exist and warrant declaratory judgment. So there's two purposes to go through the facts. The first is to show that the court got it wrong and the claims are supported. It's officially the stage of the proceedings to go forward. But the declaratory judgment, you're looking at the facts to see, oh, is this imminent? Have these city officials acted in such a way that the fear my clients have of this happening again is going to happen? Of course. I mean, we filed immediately. We want them to knock it off. They were manipulating these ordinances and going after my client. We fear that they'll do it again. And that's a point that the judge didn't address. Now, with respect to Kendall Nygaard, there was no notice of her possibility of prosecution. She lives in Florida. She wasn't aware of the driveway project specifically. Not aware of the permit application. She's an owner, though. My goodness. Everything done. Of course, Minnesota may be different. But often, everything done is done against both owners, husband and wife, many parts of law. Why is this different? Well, it's different because of the lack of notice in the statute again. Let's go back to 86.42. This is how the state legislature, when they draft the criminal code, it's taken years. It's taken time to chisel those things out. Here, the city just adopted 86.42, violations and penalties. A violation of the code is a misdemeanor. Well, that's not the type of effort required. How would Mrs. Nygaard know that this applied to her based on the language of 86.66? She's supposed to discern that from 86.42 and the rest. I think that it's different because of the way the language operates in 86.66. It refers to the person who does the work. So, it looks like Judge Erickson has a question. I'll shut up. Go ahead, Judge Erickson. Well, all I was going to say is that when you look at the permits, they're always addressed to the property owners. As long as you have an ownership interest in the property, if somebody asks for a permit, both parties are party to it in some ways. I'm having a hard time with this idea that you expect a municipality, many of whom are very small, that they're going to go through and make detailed findings on each and every ordinance that they enact. Having represented it thousands, that's not true, dozens of communities that were 200 people, I think that you're laying out some sort of a system that just doesn't exist in the real world any place. Now, I think that it's a different question as to whether or not there was sufficient notice given in this case, and that it's been properly pled. Different deal entirely, but the idea that somehow there's some sort of impropriety in the enactment of the ordinance, I'm having a hard time with that. Right. No, I get it. The point is that with respect to Republican Party of Minnesota v. White, the Code of Judicial Conduct, it's a good effort, but Justice Kennedy said it takes a long time to get these things right. I'm not criticizing the criminal enforcement of some ordinances, but there's a provision here that says we criminally enforce all the ordinances, and that would require a check to see if in these ordinances that are criminally enforced as in this case, whether when there isn't a mens rea requirement, no mental state requirement, has the act been specifically described in order to ensure that the person in that community you're talking about has notice of that conduct, which is declared criminal. And so when we see words like repair, okay, so I repair my house. I improve my house. Okay, so you're going to criminally prosecute me without defining repair and improve? There's no definition. So what we want is fairness. Now, I was going to ask you this, but you brought it up. Don't we defer to the dictionary on all kinds of simple little words that are in statutes and even the U.S. Constitution? Tell me why we don't go to the dictionary. Right, well, sure, that helps. Because a repair means repairing a light socket, repairing a carpet, repairing an external wall. I mean, it's wonderful. Everything can be a repair if you're fixing something. Everything can be an improvement, putting in a garden, putting in a, you know, painting the exterior. I would say that's improving, right? Well, counsel, now I must tell you that if you look at Black's Law Dictionary, Black's Law Dictionary says improvements, anything done to land. But the word is improve, not improvement. So Black's Law Dictionary probably doesn't have an entry for improve. I get your point. You get mine. Now, a factual question I don't know. How long was it from when the judge found Nygaard not guilty until you sued? How long was it? Let me check. Thank you for doing that. That's not in the district court's opinion and not in the stuff I have here. Okay. If it's easy, tell me. If it's hard, we'll figure it out. Okay. The trial was in September 2020, and the complaint was filed March 30, 2021. Thank you very much. So it's been about six months. Thank you very much. Something like that. So one of the issues that I need to address in that line is this idea that we're going after the city. Now, I didn't mean that, Judge Erickson. What I'm saying is that when the city is drafting laws that are criminally enforceable, there's a greater requirement under the Constitution, particularly when there's not a mens rea requirement, that the act be specifically described. And to go back to the earlier question, that when you have repair and improve, not improvement, in there, and it's so expansive, it looks like Papa Christou and Morales. That's the point of the vagueness claim is that, okay, so I'm repairing a light socket. I'm painting the exterior of my house. And the city seems perfectly fine with that. And then with respect to the exigency and imminent nature of this is we have these city officials operating under this ordinance in the way they did. And so that means, okay, and I'm sure there's concerns with the court. We don't want just bystanders on the street coming into our court and saying they want a declaratory judgment act on a land use control ordinance because it's criminally enforced. No, that's not, no. No, you guys, we're going to narrow the door, right? We're going to narrow the door that if you have this kind of situation where city officials are doing these sort of things under unconstitutionally vague ordinance, it creates standing for declaratory judgment action for just the criminal defendants in that proceeding. That is so precise. And I agree with Judge Erickson. We can't like take a 16 inch guns on the USS Iowa and start blasting away at the municipal governments and their codes, but we can protect the people in those cities from unconstitutional prosecutions under unconstitutionally vague ordinances. And this is really what we're striving to do here. And it does take some attention to detail. It takes some looking at the materials. And in the district court opinion, it was just that I think there was that misunderstanding regarding, if they had made a decision, then my client would have had a civil appeal and things would have gone civilly. But instead there was this email to the prosecutor file a citation and we went down this criminal road, which then creates the imminence, the existence to justify the prospective remedy. With respect to the damage remedies associated with the other claims, as I mentioned, I think we have enough facts alleged to support the elements of those that we get to discovery. I'll save the rest of my time for rebuttal. Very well, Mr. Shepard. May it please the court, Jared? Am I on now? Okay, may it please the court, Jared Shepard of the law firm of Campbell Knudson on behalf of the city of Orono. Your honors, this case is quite simple. It involves the city's enforcement of its zoning permit ordinance against appellants. And once we look at the facts as pled in the complaint and the documents embraced by the complaint, we'll see there was probable cause for the criminal prosecution here. We'll also see that the ordinance is not unconstitutionally begged. So if I could take you through some of those facts and kind of point you in the right direction here. As we know, it's not in dispute. Mr. Nygaard removed and poured a new driveway without a zoning permit, which is required by city code section 8666B. Okay, now, counsel, let me ask you a question. You had a period of time from September 2020 when you lost the municipal case to March 2021. Most municipalities at some point give a permit of some kind, some way, somehow. And you never did, right? Well, your honor, it was effectively denied by the non-issuance that occurred on December 12, 2019. Remember, this is a permit. Okay, now, wait, wait. You changed to a different September. So what do you say it was effectively denied? What are you talking about? Sure, so in... What tells the homeowners it was effectively denied? Tell me. So on appendix page 74, there's a letter from Community Development Director Jeremy Barnhart dated December 12, 2019. And this is useful because it essentially tells the property owner here that, look, all you have to do is acknowledge that we've made some comments on this builder acknowledgement form and we will issue the permit. That's all you have to do, and we're going to give you one chance to the end of the day. Neither the issuance nor the denial of the permit. And so at the end of this letter, you say, well, you can do this, we'll do that. If nothing happens, it's never denied. It's never issued. I mean, is it still pending today? No, the file is closed, your honor. All right, and so was any notice at any point, was there anything ever sent to the NIGARD saying, yeah, we're not issuing the permit. We're, you know. Beyond this letter, Appendix Page 74, which is also Complaint Exhibit 8, I don't believe there was any other letter sent. Certainly there's nothing in the record before this court that another letter was sent. All right, so basically this permit request application continues to pen. No final action has ever been taken. No final action has ever been taken in terms of, well, I would disagree with that. I think the failure to issue was effectively a denial. Every case that says that, that just a failure to act is a denial? Well, your honor, I just want to kind of go back to the facts here too. We have a driveway that's already been built. We're not talking about an application for something where the homeowner is waiting, hey, I want to build this. Counsel, counsel, now I may have atypical experience, but many, many contractors do something and go get the permit. Surely that's true in your city. Well, I think it happens and I think 8636 certainly allows for that if a homeowner is unaware that they were required a permit, which is not the case here, of course, but if the homeowner is unaware that a permit is needed, they have 30 days to get the permit. Those 30 days passed. More than 30 days passed. Obviously, the city was trying to work with the appellants and was unable to do so. And then at that point, he was already in violation of the code for building a driveway without a zoning permit. And so there was probable cause to issue, to file the criminal complaint. That probable cause was, of course, found, reviewed by a district court judge and found to be adequate. But I do want to make a note really quickly, your honors, with respect to the idea that there was no civil appeal right for the NIGARDS. As the appellants note in their brief, there would be a potential appeal to the Board of Adjustment of Appeals. And under city code, section 78-96, it's not in the record, but of course, the court can take judicial notice of it. Any decision of a zoning enforcement officer, that means the decision to say, hey, you need a permit, that can be appealed to the Board of Adjustment and Appeals. So it's not true that there was no appeal right for Mr. NIGARD. He could have appealed any time he wanted to. He just chose not to. Was there a decision ever really made, though? I'm sorry, your honor, what? I mean, everything that went to the NIGARD seems to be conditional in some ways. I don't see anything that says we have decided, period. I mean, maybe it's just all just not plainly stated. But I mean, how do you appeal from something that says, that doesn't say this is a decision of this person who's responsible for making this decision? Well, for one, your honor, it's very clear from the complaints and the briefing that the appellants contend that they never were required to have a permit in the first place. So they certainly could have appealed that decision. Then they could have appealed the decision when the city came back with the builder's acknowledgment form and annotating the site plan and said, hey, these are things that you need to sign off on and we'll issue the permit. And that was made clear to the NIGARDS. They could have appealed that decision because again, it falls under 7896, which says you can appeal any decision of a zoning enforcement officer. So that was available to them. And I want to get to what I think is- Before we finish, now complaint exhibit eight, which I've not read, but I see it referenced everywhere. It only says the possible legal action is threatened. It does the same thing about appeal rights, right? Our final decisions, right? That's correct, your honor. Thank you. Proceed. So I want to go back because I think this is important. There is context between these parties and that context is revealed from the complaint, from the arguments of counsel, and from civil cases that this court can take judicial notice of. There are court cases listed on page four, footnote 21 of the city's brief, and those are instructed. And here's why. Once NIGARD was made aware by the city building official that he needed to have a zoning permit, he poured the driveway anyway, but he did go back in and apply for a permit after the fact. As we've said, the code contemplates for people who don't know that they have a permit, they have 30 days to once informed. Now he knew and poured anyway, but he applies for a permit. He submits a site plan. That site plan included more than the driveway. It included a wind turbine on the other side of his house, on the lakeward side of his house. Now that's important because of the ongoing litigation between over several years, five or six now at this point, between the city and Mr. NIGARD, where he was told twice, not just Mr. NIGARD, sorry, both appellants, twice that they could not have wind turbines on their property. And twice, two different district courts told them to remove those. One ended up in contempt where Mr. NIGARD was thrown in jail in order to get the final removal. And that's also important because the idea that this 8666B provides no notice about hardcover, Mr. NIGARD was very well aware of hardcover because that was litigated in those cases with respect to the footing for these wind turbines. And so he comes back and I want to turn the court's attention to complaint exhibit two. This is appendix page 67. He sends an email to Christine Matson, the planner, and relevant party said, the wind turbine is not a part of this application, but a separate one. Thus, I am not signing that part either, which the city would use to construe that I gave up my right to have a wind turbine. Last, I am not initialing the bastardized site plan I sent to you. Once again, the city would construe it as giving up my right to harvest the wind, and I will not do that. So essential, the wind turbines inclusion on this site plan was essential to the appellants. And then a follow-up to that makes it even more clear what he could have done. Appendix page 69, complaint exhibit four, and an email back from the planner to Mr. NIGARD. If the wind turbine is not part of this application, why is it shown on the plan? Either accept the annotation offered by staff, this is the annotation where staff said, wind turbine not permitted, or submit a new site plan, removing objects not part of the permit application. And he rejected that, and he never submitted a new site plan. And as the record shows, all of the other, whether you call them conditions or comments, I think in hindsight, you could see that they all should have been under the comment section of that builder acknowledgement form. We find that everything was an advisory notation. It wasn't something that he had to do because he had already built the driveway. And that was made clear again, all the way in the December 12th letter from Mr. Barnhart. So the only thing that was ultimately the hangup was this issue of the wind turbine. And you can compare the two site plans. Those are appendix pages 94 and 95 for the court. And so again, the problems here that were created were really problems created by the appellants. There was probable cause for that process. Mr. Shepard, in that regard, the citation charged them with a violation of section 8666B, correct? That's correct. Is it an only 8666B? That's correct. All right. As I read 8666B, it says that a permit shall be submitted by the individual performing the work. Correct? That's correct, Your Honor. So what's the basis of probable cause against Kendall Nygaard for violating 8666B? Well, Your Honor, as Judge Erickson noted, and Judge Benton, this is very common that these ordinance applied to the owner and occupants of the property. 8636. I see that in other ordinances of, you know, if we look at 8636, it applies to owners. But this is 8666B. And it sure seems to me to say by the individual performing the work, not owners. So I don't, what's the base? Was there any effort made to investigate whether Kendall Nygaard had an involvement in doing the work? Well, two points, Your Honor. First, a lot of these ordinance operate together. I understand that the complaint only, it only talks about 8666B because that's the specific requirement for the permit. But a lot of city ordinances operate together. And when we talk about- Yeah, but you can't have a bunch of city ordinances operating together to form a criminal complaint. I mean, you know, a criminal complaint must allege a crime. A crime's got specific elements. And once you elect to allege a criminal violation, you've got to meet each of the elements. And it seems pretty clear that under 8666B that there's just no way that you can indict or file a complaint against a criminal complaint against anyone except an individual performing the work. Well, Your Honors, I would submit that in this context, the individuals performing the work are the property owners. It wasn't that Mr. Nygaard himself was the one who came with the concrete truck and poured the driveway. I believe he had that brought over by a contractor, but he had the work done. And therefore, Ms. Nygaard had the work done as a property owner. I do also want to note that on page 18 of the transcript of the hearing in front of the district court- to determine whether she was there when the contractor came over with the concrete or any effort at all just to prove that or to investigate whether she had any involvement in doing the work. Well, Your Honor, there's nothing in the record that discusses an investigation about whether or not Ms. Nygaard was involved in doing the work. However, at the district court oral argument, again, transcripts in the record before this court, page 18, a counsel for the appellants admit that they were in conversation about whether or not they should apply for a permit. So there was, you know, just as one could assume between two property owners, conversations about the work being done on the property that they own. But I don't think we assume probable cause. And probable cause isn't shown after the fact. That's correct, Your Honor. But again, I submit that as a owner and occupant of the property, the city had probable cause to file a criminal complaint against Ms. Nygaard. And more importantly, the- sorry, Your Honor, if I may finish my comment. More importantly, Judge Wall reviewed the complaint, found probable cause, and it's very clear from the case law that if a judge finds probable cause, it negates the lack of probable cause because the person challenging it, the person who initiated the complaint is in no more better stead than the judge themselves. So I would submit that probable cause existed here. Thank you for your time. Thank you, Mr. Sheppard. Mr. Cardle, your rebuttal. You'll have to unmute your microphone. Yes, in the short time I have, I just wanted to emphasize one point. We're at the Rule 12 motion stage. And a lot of these legal issues are of significant importance, of course, to the Nygaards and to the public. And so I would hope that we'd be allowed to have a discovery before some of the legal issues are resolved. For example, let me take one sentence from the district court opinion. The Nygaard's facial challenge is not brought on First Amendment grounds, making it generally disfavored under well-established law. Well, sometimes you get new fact patterns like this one. You say, well, wait a minute, is fearing prosecution in jail important too? Isn't due process important? And Papa Cristo and Morales suggest that. Now, I agree the courthouse door has to be narrowed with respect to, for the Declaratory Judgment Act relief, remedy is to ensure that that person has been prosecuted under that ordinance that's being challenged as unconstitutionally vague. But that's the concern. I understand the court's concern. We're not going to open the door to everyone walking down the street to challenge ordinances that are criminally enforced. But if you have a situation like this, where these specific officials have used that vague ordinance in this sort of a way and have been constitutionally acted, they have a reasonable fear of future criminal prosecution and being jailed. So why is the First Amendment right more important than the right not to be jailed, not to be prosecuted for the purpose of jailing? And so- Let me interrupt. Let me interrupt you. Do you know why, I didn't see it in the opinion, that the abuse of process claim in the Declaratory Judgment Claim were dismissed without prejudice? Do you know why I didn't see anything in the district court's order why that was done? Yeah, no, I didn't either. I viewed it as sort of an exercise of a supplemental jurisdiction and that was discretionary use there. But I really feel that the lower court thought that there's something wrong. We're going to let those claims continue. And the lower court may have felt confined by these earlier decisions as well. But I'm suggesting the court has just cautioned that these are really important legal issues. And what we should do is send it back down and then have us do the discovery and present it in a very good way. Thank you, Your Honor. Thank you, counsel. We appreciate both counsel's appearance today and argument cases submitted and we will issue an opinion in due course.